John F. KOMOSA, Jr., Appellant/Cross-Respondent,

v.

Maria D. KOMOSA, Respondent,

v.

Alice F. KOMOSA, Respondent/Cross-Appellant.

No. 69671.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 14, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 19, 1997.

Application to Transfer Denied March 25, 1997.

See also 776 S.W.2d 424.

David R. Bohm, Roger P. Bernhardt, Danna, Soraghan, Stockenberg and McNary, P.C., St. Louis, for appellant/cross–respondent.

Susan M. Hais, James P. Carmody, Philip E. Adams, Hais & Carmody, P.C., Clayton, for respondent.

GERALD M. SMITH, Judge.

Both parties appeal the judgment of the trial court in this grandparent visitation case. Defendant father appeals from the trial court denial of permission to move to Colorado to live with his wife and from the court award of $5000 to grandmother's attorney "in the nature of support" toward grandmother's expenses in attempting to enforce the prior court order granting her visitation. We reverse both of those portions of the judgment. Grandmother appeals from the portion of the judgment denying a change of custody from father to her. We affirm that portion of the judgment. Father does not appeal from the portion of the judgment finding him in contempt for violation of the visitation order.

John Komosa, III, son, is now twelve years old. During much of that time his father and paternal grandmother have been fighting over him. His father and mother were divorced in 1988 and his mother received custody. That custody award was appealed to this court and affirmed. *Komosa v. Komosa,* 776 S.W.2d 424 (Mo.App.1989). While in mother's care son was physically and emotionally abused by mother and her new husband. Custody was transferred to father and mother has had no visitation rights or contact with son since. For approximately a year, father and son lived with father's second wife but after they were divorced father and son moved in with grandmother. After less than a year father and grandmother had a disagreement and father and son moved out. Father refused further contact between son and grandmother.

In 1992, grandmother entered the case as Intervenor seeking visitation and temporary custody. She was granted extensive visita-

tion. Modifications of the visitation award were subsequently made. The award from which the case before us is appealed occurred on October 24, 1995. By that time father and son were residing in the Kansas City area.[1] In the October 1995 order, among other things, the court reaffirmed the visitation schedule set out in its earlier order dated March 4, 1994. The visitation provided for two two-week periods each summer, for seven holiday weekends every year and in odd years, the spring/Easter vacation of son and four-day Thanksgiving weekend. Transportation costs of the holiday weekends and the spring vacation were to be paid by grandmother. The remainder of the visitation transportation costs were to be paid by father. The 1994 award, reaffirmed in 1995, also required father to authorize health care providers and school officials to provide grandmother with all records, reports and information pertaining to the son requested by the grandmother.

Both the March 1994 and October 1995 awards were issued after hearings in which the court found father in contempt for interfering with grandmother's visitation. It is apparent from the record that father is quite resistant to the visitation afforded to grandmother and further apparent that both grandmother and father have a deep and abiding dislike for each other which is manifested by their continuing warfare over the child.

In August 1994 father married Cindy, an acquaintance from high school. She resides in Arvada, Colorado, a suburb of Denver, where she has resided for fifteen years. Father continued to reside in Kansas City where he was attending school. Cindy has chronic fatigue syndrome and cannot work full time. She is employed in a chiropractic office by her sister and does not believe she could find comparable work because of her health elsewhere. She owns a condominium in Arvada. Father is disabled and receives disability benefits. He plans to attend col-

1. Father and son were actually residing in Lenexa, Kansas. The record supports a finding that grandmother did not object to the Kansas residence because the parties believed the school district in which father and son resided was superior to the school districts in which they would reside if they stayed in the Kansas City area in Missouri.

lege in Colorado. He testified that living with his wife would have substantial economic benefits and would be a step-up in living accommodations. There was substantial evidence that son is quite close to Cindy and she to him and that son views her as "mom".

Son testified that he wanted to move to Colorado and has already made friends in the complex where Cindy lives. He further testified that visitation with his grandmother is unpleasant and he does not like it. It interferes with his activities, particularly his athletic activities, some of which his grandmother requires he miss in order to visit with her. Father testified this included an all-star game son had been selected to play in.

█ Section 452.402 provides as follows:

1. The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court may grant grandparent visitation when:

(1) The parents of the child have filed for a dissolution of their marriage. A grandparent shall have the right to intervene in any dissolution action solely on the issue of visitation rights. Grandparents shall also have the right to file a motion to modify the original decree of dissolution to seek visitation rights when such rights have been denied to them;

(2) [not applicable]; or

(3) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days.

2. The court shall determine if the visitation by the grandparent would be in the child's best interest or if it would endanger the child's physical health or impair his emotional development. Visitation may only be ordered when the court finds such visitation to be in the best interest of the child. The court may order reasonable conditions or restrictions on grandparent visitation.

The original grandparent visitation statute in Missouri allowed visitation only upon the death of the grandparent's child. See 452.402 RSMo 1978 (superseded). The present statute provides for visitation in divorce situations and even in situations where there is an intact family, assuming that visitation has been unreasonably denied for ninety days.[2]

Coupled with the grandparent visitation statute is § 452.377 which provides:

A person entitled to the custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or with the written consent of the *parties with custody or visitation rights.* Where the *noncustodial person* has been given visitation rights by the custody decree, such court permission may be granted only after notice to the person having visitation rights and after opportunity for hearing. Violation of a court order under this section may be deemed a change of circumstances under section 452.410, allowing a court to modify the prior custody decree. (Emphasis supplied)

█ The Missouri Supreme Court addressed the constitutionality of § 452.402 in *Herndon v. Tuhey,* 857 S.W.2d 203 (Mo.banc 1993). The court upheld the constitutionality of § 452.402 on the basis that the statute did not impose a substantial infringement by the state on the family relationship. "Missouri's statute is reasonable both because it contemplates only a minimal intrusion on the family relationship and because it is narrowly tailored to adequately protect the interests of parents and children." *Id.* at [9]. The clear thrust of the opinion is that if the statute is applied in such a manner as to constitute more than a minimal intrusion on the family relationship then such application would be unconstitutional and prohibited.

In the case before us, the utilization of § 452.402 combined with the restraints of § 452.377 constitutes an intrusion into the family relationship of such enormous consequences as to render the court's judgment

---

**2.** We can only wonder how courts are to determine when visitation has been unreasonably denied where, as here, a parent and adult child have become so estranged that they can not communicate and act only to hurt one another. We can also only wonder what business courts have getting into such intra-family disputes.

denying relocation to Colorado totally unconstitutional.

In *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) the court reaffirmed the fundamental character of the right to marry, holding it to be "one of the 'basic civil rights of man,' fundamental to our very existence and survival." S.Ct. at [6]. Any state restriction which significantly interferes with the exercise of a fundamental right is subject to strict scrutiny and cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests. *Id.* at [8,9]. Cohabitation is a basic and fundamental aspect of marriage.[3] The evidence here is clear that father and Cindy are married; that Cindy's job and housing make a move from Denver extremely difficult if not impossible; that both parties to the marriage and the son desire that the family be united in Denver.

A spouse is not required to elect between the custody of his child and cohabitation with his wife because of visitation awarded by a court to a grandparent. Grandmother's counsel at oral argument suggested that such an election was required. In *In re the Marriage of Eaton*, 269 Ill. App.3d 507, 207 Ill.Dec. 69, 646 N.E.2d 635 (1995), the court held that the interests of the custodial parent in a subsequent marriage should not be subordinated to the interests of a non-custodial parent. *Id.* at [13]. The interests of a non-custodial parent far exceed the interests of a grandparent who has been granted visitation privileges which can only involve a "minimal intrusion" on the family relationship. Grandparental visitation is not on a par with parental visitation in custody matters. *Herndon v. Tuhey, supra,* at [10,-11]. Requiring the father here to obtain the permission of the grandmother or the court to move to Colorado to join his wife imposes an unconstitutional burden on him and the court's order denying permission was in error.[4]

The visitation awarded here was similar to that established by this court in *Siegenthaler v. Siegenthaler,* 761 S.W.2d 262 (Mo. App.1988)[13]. That schedule is designed for parents. It is totally inappropriate for grandparent visitation which is not intended to equate with parental visitation, or with the contact between the grandparent and child prior to deterioration of relations between the parties. *Herndon, supra* at [10,11]. The visitation awarded here far exceeds that which the *Herndon* court found to be minimally intrusive and therefore constitutional. With father's relocation to Colorado and the presence in the home of a mother figure the issue of grandmother visitation must of necessity be reexamined.[5] While we entertain considerable reservations that visitation with grandmother is in son's best interest, that is a determination for the trial court and rests largely within its discretion. We cannot say granting continuing visitation would be an abuse of that discretion. The trial court should, on remand, determine whether such visitation shall continue and if so shall grant such visitation within the minimal intrusion guidelines set forth in *Herndon, supra.* In that regard, visitation should not be granted more frequently than once every ninety days and is to occur in the area of the child's residence.

---

**3.** It may be conceded that continuous cohabitation is not a requirement in a marriage. It is, however, normally a part of any marriage.

**4.** We here find denial of permission to relocate out of state erroneous because it interferes with the fundamental rights of marriage. It is to be noted that many other reasons for relocation to another state involve fundamental rights. Where the visitation rights of a non-custodial parent are compromised by such moves there is a four part test utilized to determine whether such relocation will be approved. *See, e.g., Effinger v. Effinger,* 913 S.W.2d 909 (Mo.App.1996)[5]. Such a test has no applicability to determining whether a move is permitted where grandparental visitation is involved. The only test is whether denying permission to make the move is more than a minimal intrusion on the family relationship. We cannot say that such denial could never meet such a test, but we are hard pressed to frame a factual scenario which would.

**5.** Grandmother advocates the heavy visitation because of the absence of a mother figure in her grandson's family. During the time this matter has been pending, that absence exists because of grandmother's refusal to give permission for her son to live with his wife.

The requirement that father allow grandmother access to son's medical and school records infringes more than minimally on his rights as regards his son. Grandmother has no right to involve herself in school and health care decisions and so has no need for such records if father does not choose to make them available to her.

The award of $5000 to grandmother's lawyer "in the nature of support" is reversed. Father has no obligation of support to the grandmother (or to her lawyer) and such an award is improper. Grandmother suggests that the award was in the nature of a fine for father's contempt. It was not so designated and we do not so interpret it.

On grandmother's appeal, the court found no change of circumstances sufficient to authorize a change of custody. The record fully supports that finding. The record does not demonstrate that father is an unfit parent and certainly does not establish that grandmother is a more fit custodian.[6]

Judgment denying grandmother's motion for change of custody is affirmed. Judgment denying father's motion for permission to relocate with son to Colorado is reversed. Judgment awarding grandmother $5000 in nature of support is reversed. Cause remanded for further proceedings in accordance with this opinion.

CRANE, P.J., and PUDLOWSKI, J., concur.

---

**6.** The record reflects that she is 74 years old, is estranged from three of her four children, has a strained relationship with her grandson, and has insisted on her visitation privileges even when it interfered with her grandson's activities.