Kenneth RAY and Rebecca Fern Rogers, Respondents,

v.

Rich HANNON and Leea Lorraine March, Appellants.

No. 56838.

Missouri Court of Appeals, Western District.

March 21, 2000.

Jill R. Creed, Macon, for Respondents.

Jon E. Beetem, Jefferson City, for Appellants.

Before: Presiding Judge SPINDEN, Judge LOWENSTEIN and Judge ULRICH.

HAROLD L. LOWENSTEIN, Judge.

Appellants Rich and Leea March appeal the judgment of the Circuit Court of Randolph County, awarding Kenneth and Rebecca Rogers grandparent visitation rights with Appellants' daughter under the auspices of § 452.402, RSMo Cum.Supp. 1996.[1] The court granted the Rogers grandparent visitation rights after finding the Appellants had unreasonably denied them visitation with their granddaughter for a period exceeding ninety days. On appeal, the Marches claim the trial court abused its discretion in granting visitation because (1) the visitation granted was excessive and not minimally intrusive and (2) there was no substantial evidence in the record to support the finding that grandparent visitation was in the best interest of the child. Affirmed.

## STATEMENT OF FACTS

On March 25, 1993, Taylor Raebecca March ("Child") was born to Appellants Leea March ("Mother") and Rick March ("Father") (collectively, "Parents"). The Child's maternal grandparents are Re-

---

1. All further statutory references are to the Revised Statutes of Missouri Cumulative Supplement 1996.

spondents Rebecca Rogers ("Grandmother") and Kenneth Rogers ("Grandfather") (collectively, "Grandparents"). Parents, Child and Grandparents all reside in or around Cairo, Randolph County, Missouri.

Mother and Father were unmarried when their Child was born. Mother, age seventeen, was in high school at the time and was living with Grandparents. Child lived with Grandparents from the time of Child's birth until May 12, 1997. It is undisputed that during this more than three-year time period, Grandparents were the primary care givers for the Child with Grandmother performing the majority of the parenting duties. Father never resided in the Grandparents' home while his Child was there living. Mother did reside with Grandparents for part of the first three years of Child's life. During the times Mother moved out of Grandparents' home, the Child continued to reside with and be cared for by Grandparents.

In the spring of 1997, Mother and Father decided they would marry and attempt to raise Child themselves. On Mother's Day, 1997, Father took the Child for a visit. Upon return to the Grandparents, Grandfather claims the Child told him of inappropriate contact between Father and Child. Thereafter, Grandmother made a "hotline call" to the Division of Family Services alleging abuse of Child by Father. The next day, Mother removed Child from the Grandparents' home. Following an investigation, the hotline allegations were found to be unsubstantiated. However, the incident undoubtedly fueled family turmoil.

About a week after Parents removed Child from the Grandparents' home, Mother and Father were married. After this time, Parents did not allow Grandmother any contact with the Child. Father felt Grandmother should not have access to the Child due to the hotline call Grandmother had made. Grandfather was allowed minimal contact with the Child during this time. On New Year's Eve 1997, when Mother and Father were separated, Mother did allow Grandparents to visit with Child. Upon Father's return, during the first week of January 1998, Father discontinued Grandparents' visitation. Since January 1998, Grandparents have been denied all contact with the Child.

Grandparents filed their claim for visitation rights under § 452.402.1(3), the subdivision allowing a court to grant grandparent visitation rights when the grandparents have been unreasonably denied visitation with the child for a period exceeding ninety days.

The court entered its judgment and decree granting Grandparents visitation rights as follows:

1. One weekend every other month from Friday at 6:00 p.m. to Sunday at 6:00 p.m., the weekend to be determined by Grandparents after 30 days notice to Parents.

2. One week of visitation during a summer month, the week to be selected by agreement, if possible, and if not, by Parents, taking into account Grandparents plans for the week of visitation.

3. Grandparents may visit with Child by telephone on the first Sunday of each month from 1:00 p.m. to 1:30 p.m.

Additionally, the court found it would be in the best interest of the Child to visit Grandparents while one or more of her cousins was also visiting.

## STANDARD OF REVIEW

The judgment of the circuit court will not be reversed on appeal unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Simpson v. Buck,* 971 S.W.2d 856, 858–9 (Mo.App.1998) (cases cited therein omitted). "In matters pertaining to visitation rights, this Court gives deference to the trial court's assessment of what serves the best interests of the child." *Id.* at 858.

## ANALYSIS

As their first point on appeal, Parents assert the trial court abused its discretion in granting visitation rights to Grandparents because the visitation awarded was excessive and intrusive on the family in that it exceeded limitations recognized by applicable caselaw and was granted too frequently. Grandparents sought and were awarded visitation rights under § 452.402.1(3) which reads as follows:

1. The court may grant reasonable visitation rights to the grandparents of the child and issue any necessary orders to enforce the decree. The court may grant grandparent visitation when:

 (3) A grandparent is unreasonably denied visitation with the child for a period exceeding ninety days.

Parents claim under this statute, as analyzed by the Supreme Court of Missouri in *Herndon v. Tuhey*, 857 S.W.2d 203 (Mo. banc 1993), the visitation awarded Grandparents exceeded the statute's limitations.

*Herndon v. Tuhey* was a grandparents visitation case brought under the same statutory section here at issue, § 452.402.1(3). The *Herndon* court upheld the constitutionality of § 452.402.1(3) while reversing the visitation awarded the Herndons as excessive. The Court determined the statute contemplated only a "minimal intrusion on the family relationship" and was "narrowly tailored." *Herndon*, 857 S.W.2d at 210. Additionally, the Court wrote, "the ninety-day period of unreasonable denial of visitation that must elapse before a court may enter an order under section 452.402 indicates the legislature contemplated an allowance of minimal visitation subject to reasonable restrictions." *Id.* Based on the limitations inherent in the statute, the Court found § 452.402.1(3) to be constitutional, as it adequately protected the family and was not overly intrusive.

Next, the Court examined the actual visitation granted the Herndons. Grandparents were awarded visitation of two Saturdays each month and later one Saturday and one overnight visit per month plus visitation around the Thanksgiving and Christmas holidays, a week during the summer and mandatory notification of all Grandchild's school, social, and athletic activities. The Supreme Court of Missouri struck down this portion of the judgment as excessive. The Court interpreted § 452.402's ninety day denial of visitation requirement prior to court involvement to mean the legislature contemplated visitation awards that were not excessive, were not on a par with parental visitation and were more limited than that granted the Herndons. *Id.* In the case at bar, Parents interpret the *Herndon* holding as such:

> By referencing the 90 day limit in the statute at least twice when determining that Missouri law was reasonable, the Supreme Court tacitly acknowledged the significance of this limit. If this limit is meaningless or subject to contravention by the discretion of the trial court, then the rationale which permitted the Missouri Supreme Court to find § 452.402.1(3) constitutional is likewise destroyed. Simply said, permitting visitation orders of a frequency of less than every 90 days would authorize a court to enter an order creating a right which does initially not exist.

Parents seem to say that a trial court should not grant visitation more than once every 90 days or the statutory restrictions recognized by the *Herndon* court are violated. After analyzing the *Herndon* opinion itself along with those cases interpreting that decision, this court finds Parents' analysis to be incorrect and finds under the facts of this case, the visitation awarded was not excessive.

■ From a reading of the *Herndon* case, it does not appear the Supreme Court established a rule whereby a court may not grant grandparent visitation more than once every ninety days. The bare language of the *Herndon* decision says the initial ninety day denial of visitation requirement makes § 452.402.1(3) constitu-

tional because it guarantees that a court will not intrude upon the family for less than an egregious denial of visitation. The statute sets ninety days as the limit of permissible visitation denial after which point a court may intervene. It is therefore a type of "jurisdictional" waiting period, after ninety days without visitation an aggrieved party may gain access to the courts. The time limit does not appear to be a directive to the courts as to a permissible interval of visitation. Since the statute sets ninety days as the amount of time that is too long to pass without visitation, it makes little sense to argue that visitation should then not be granted more than once every ninety days. That would in effect require a court to set visitation at at least a ninety day interval, an interval the statute elicits is so egregious as to permit court intervention. This court finds such an interpretation to be without merit. Neither the statutory scheme nor the *Herndon* holding supports such an interpretation.

There are two Missouri cases, relevant to the case before the court, interpreting the *Herndon* decision. In *Komosa v. Komosa* 939 S.W.2d 479 (Mo.App.1997), after striking down a visitation award as excessive, the Eastern District Court of Appeals remanded to the trial court instructing that "visitation should not be granted more frequently than once every ninety days." *Komosa,* 939 S.W.2d at 483. The court found that such a restricted award would comport with the "minimal intrusion guidelines set forth in *Herndon.*" *Id.*

The Western District in *Simpson v. Buck,* 971 S.W.2d 856 (Mo.App.1998) first acknowledged that *Herndon* placed limits on a court's powers to bestow visitation rights upon grandparents. After this acknowledgement, the court noted the *Komosa* court's restriction on visitation to once every ninety days. The *Simpson* court then held that "other facts may well

require more frequent or flexible terms of visitation." *Id.* at 859. This court went on to approve a visitation schedule of once every two months, obviously awarding visitation more than once every ninety days.

As interpreted by this court, neither of these cases supports Parent's argument. True, in *Komosa* the Eastern District struck down a visitation award and remanded to the trial court with instructions not to award visitation more than once every ninety days. However, that court made no claim that *Herndon required* a ninety day interval. This court's interpretation of *Komosa* is that the ninety day instruction given to the trial court was simply the *Komosa* court's determination as to appropriate and minimally intrusive visitation in the particular case before it, not a mandate as to what is appropriate or required in every case. Any interpretation to the contrary, this court chooses not to follow. And, in *Simpson,* this court upheld a visitation grant of once every two months after acknowledging that the facts of an individual case dictate appropriate visitation. Neither *Komosa* nor *Simpson* supports Parent's contention that a court should not, in any case, grant visitation more frequently than once every ninety days.

 While nothing requires that visitation be awarded only at a ninety day interval, *Herndon* does require that the visitation awarded not be overly intrusive on the family. In this case, Grandparents were awarded visitation of one weekend every other month, the weekend to be determined by Grandparents, one week in the summer, the week to be determined by agreement or by Parents if no agreement can be reached, and one half hour phone conversation on the first Sunday of each month. Additionally, the court found that visitation while Child's cousins were also visiting Grandparents would be in the Child's best interest.[2] Parents claim this

---

**2.** Parents claim this additional finding is in error as it grants additional "cousin visitation." However, this finding does not award

"extra" visitation, it only serves as a guideline to the parties as to when the granted visita-

award was excessive in that it granted visitation too frequently and put too much control in the hands of Grandparents by allowing them to choose the weekend of visitation.

■ As this court noted in *Simpson*, the particular facts of a case dictate the frequency with which visitation should be awarded. "[O]ther facts may well require more frequent or flexible terms of visitation." *Simpson*, 971 S.W.2d at 859. Based on the facts of this particular case, the visitation awarded was not excessive. This is a case in which Grandparents were the Child's primary caregivers for the first three years of her life. Father had infrequent contact with Child during those years while Mother moved in and out of the Child's life. Grandparents were her only constant during those early years of development. To say now that it is excessive to allow Grandparents, the primary caregivers of Child for the first years of her life, to visit with Child once every other month plus a week in the summer and a monthly telephone call defies common sense. Grandparents had more than an ordinary role in raising Child, they should now be allowed reasonable visitation with her. In the case at hand, the visitation awarded Grandparents was more than reasonable and was narrowly tailored to these facts. Parents additionally complain that allowing Grandparents to determine the weekend of visitation is too intrusive on the family. However, under the facts presented, this court can see no evidence of such. Parents first point on appeal, that the visitation awarded was excessive and exceeded the statute's limitations, is denied.

■ As their second point on appeal, Parents claim the trial court erred in finding that visitation would be in the Child's best interest because there was no substantial evidence in the record to support that finding. By § 452.402.2:

[t]he court shall determine if the visitation by the grandparent would be in the child's best interest or if it would endanger the child's physical health or impair the child's emotional development. Visitation may only be ordered when the court finds such visitation to be in the best interests of the child.

Regarding the finding that visitation was in Child's best interest, Grandparents point out that there was evidence before the court that (1) Grandparents were the primary caregivers of Child for the first three years of her life, (2) Child had a close and loving relationship with Grandparents, and (3) Visitation with Grandparents allowed Child more frequent contact with aunts, uncles and cousins. There was substantial evidence before the court upon which the court could find visitation was in the best interest of the Child. This court gives deference to the trial court's finding to that effect. *Simpson*, 971 S.W.2d at 858. The finding that compulsory grandparent visitation would be in the best interest of the child will not be set aside as this court does not have a firm belief the judgment is wrong. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Point denied.

As applicable to the facts here, the court notes the observation in the *Herndon* opinion that the "…personalities and character traits have combined with a series of events and have caused the parents and grandparents to be alienated from each other and, more importantly, have resulted in [Child] and [her] grandparents being isolated from each other." " *Herndon*, 857 S.W.2d at 204. In the case at bar it is obvious the Grandparents' extended time as surrogate parents coupled with the unfounded hotline call created a tension that has continued to the present time. But, as the guardian ad litem here stated in his recommendation for limited visitation, "…this is a family problem and should be worked out by the family. The time has come for the family members to discontin-

tion should be scheduled, taking into account the best interest of the Child.

ue fighting over [Child] and acting in a manner that only hurts one another." To this advice, this court concurs.

The trial court's award of grandparent visitation was not in error. The judgment is affirmed.

All concur.

J. SPINDEN's concurrence attached.

PAUL M. SPINDEN, Judge, concurring.

I concur with the majority. In light of *Herndon v. Tuhey*, 857 S.W.2d 203 (Mo. banc 1993, the result is proper. I write separately, however, to express concurrence with Judge Covington's dissent in *Herndon*.